OPINION *Page 2 
{¶ 1} Plaintiff-Appellant State of Ohio ("State") appeals from the June 2, 2006 judgment of the Court of Common Pleas, Mercer County, Ohio granting Defendant-Appellee Franklin Weis' ("Weis") Motion to Suppress.
 {¶ 2} This matter stems from events occurring on August 19, 2005 in Celina, Mercer County, Ohio. At approximately 3:09 a.m. Patrolman Steven Yoder ("Yoder") of the Celina Police Department was dispatched to the 400 block of East Livingston Street in Celina to speak with a citizen who had called the police to report suspicious activity near her residence. Upon his arrival, Yoder met with the complaining citizen who reported that she was cleaning her house when she heard her dog barking. She stated that she looked out the window and observed a vehicle with a dark colored top and light colored bottom which she believed to be a Ford Crown Victoria. She advised that she saw an individual run from the alley behind her house toward the parked car. She said that she noticed the vehicle pull into the alley with its headlights off before proceeding down the alley. She stated that she observed the vehicle park at the corner and observed two individuals running toward the vehicle and climb into the backseat after opening and closing the trunk. She said that the vehicle then left the area. *Page 3 
 {¶ 3} Yoder then began searching the area from his patrol car. Yoder traveled approximately one block before observing taillights and identifying a two-toned Mercury Grand Marquis. After following the vehicle for a few blocks, Yoder initiated a traffic stop of the vehicle and called for assistance from the Mercer County Sheriffs Department. Yoder made contact with the driver, Adam Moorman, and asked him to exit the vehicle. In response to questioning by Yoder, Moorman stated that he had picked up his friend, a passenger in the backseat, and was taking him to Auglaize County. Yoder explained that the reason for the stop was because of suspicious activity concerning the vehicle.
 {¶ 4} Lieutenant Martin Emerine ("Emerine") of the Sheriffs Department arrived at the scene and remained with Moorman, allowing Yoder to speak with the other passengers individually. Yoder made contact with Weis and then made contact with the other two passengers inquiring as to their plans that evening. Each passenger gave similar but somewhat conflicting stories, raising Yoder's suspicions. Additionally, one of the passengers was taken into custody after it was determined that he had an outstanding warrant from Auglaize County for cocaine possession.
 {¶ 5} Yoder spoke with Moorman again and requested permission to look in the trunk of the vehicle. Although Moorman agreed to the search, he stated he *Page 4 
did not have a key to unlock the trunk. Yoder was unable to locate a trunk release button and discovered that the ignition key did not open the trunk.
 {¶ 6} Emerine then informed Yoder that there was a key in the middle console of the vehicle. The officers asked Moorman if they could try this key in the trunk, but Moorman refused to allow further search of the vehicle. To obtain guidance, Yoder contacted the Celina police chief by phone and advised him of the situation. The chief advised Yoder to contact the owner of the vehicle, Moorman's stepfather, to secure permission for the search of the trunk. However, Yoder's attempts to reach the stepfather were unsuccessful. Yoder then informed Moorman that he was going to impound the vehicle because he felt there was something in the trunk. The driver and passengers were released and a tow truck was called. After being impounded, the vehicle was subjected to an inventory search where the Celina police used the key found on the front console to open the trunk. Inside the trunk the police discovered a battery-operated Honda mini-bike which was later reported stolen from the garage by a family residing in the same area where Yoder responded to the call about the suspicious activity.
 {¶ 7} On December 15, 2005 a Mercer County Grand Jury indicted Weis on one count of Breaking and Entering in violation of Ohio Revised Code Section 2911.13(A), a felony of the fifth degree. *Page 5 
 {¶ 8} On March 28, 2006 Weis filed a motion to suppress all evidence gathered as a result of the traffic stop on August 19, 2005. Weis asserted three arguments in support of his motion to suppress: First, Weis alleged that the traffic stop in this case violated Terry v.Ohio (1968), 392 U.S. 1. Second, Weis asserted that the length of detaining the vehicle and its occupants after the stop was unreasonable. Third, Weis claimed that Officer Yoder lacked probable cause under theFourth Amendment to seize the vehicle, thereby invalidating the subsequent inventory search.
 {¶ 9} The trial court conducted a hearing on Weis' motion to suppress on April 10, 2006. At the hearing, the State presented the testimony of officers Yoder and Emerine. At the close of testimony the court permitted the State to file a written response to Weis' motion to suppress and allowed Weis to file a reply brief.
 {¶ 10} On June 2, 2006 the court entered a Judgment Entry granting Weis' motion to suppress. In its Judgment Entry the court specifically addressed each of Weis' arguments in support of the motion and ruled as follows:
 The court finds that defendant's motion to suppress evidence is well taken to the extent that any physical evidence of the crime of Breaking and Entering with which the defendant is charged in this cause that was gathered as a result of the inventory search of the trunk of the vehicle in which the defendant was a passenger on August 19, 2005 is suppressed and found to be inadmissible and excluded from evidence in the foregoing cause. Otherwise, defendant's motion to suppress is found to be not *Page 6 well-taken, and all other evidence regarding the traffic stop of the vehicle in which defendant was a passenger on August 19, 2005, are hereby deemed admissible in the State's case in chief.
 {¶ 11} The State now appeals, asserting one assignment of error.
 ASSIGNMENT OF ERROR AS FOURTH AMENDMENT RIGHTS ARE PERSONAL AND MAY NOT BE VICARIOUSLY ASSERTED, A PERSON NEEDS TO CLAIM A PROPERTY OR POSSESSORY INTEREST IN A VEHICLE THAT IS SEARCHED IN ORDER TO BE AFFORDED ANY FOURTH AMENDMENT RIGHT IN THE CAR.
 {¶ 12} In its sole assignment of error, the State contends that the trial court erred in granting Weis' motion to suppress as Weis did not have standing to claim a Fourth Amendment violation and challenge the lawfulness of the search of the vehicle.
 {¶ 13} When a trial court considers a motion to suppress, it must make both factual and legal determinations. State v. Jones 9th Dist. No. 20810, 2002-Ohio-1109. At a suppression hearing, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.State v. Carter (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965;State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Appellate review of a decision on a motion to suppress presents a mixed question of law and fact. State v. Kuhn 3rd Dist. No. 4-06-16, 2006-Ohio-5390
citing United States v. Martinez (C.A.11, 1992), 949 F.2d 1117, 1119. When reviewing *Page 7 
a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995), 73 Ohio St.3d 308,314, 652 N.E.2d 988. We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of witnesses[,]" and then independently review whether the trial court applied the correct legal standard. State v. Anderson (1995),100 Ohio App.3d 688, 691, 654 N.E.2d 1034.
 {¶ 14} Prior to addressing the State's assignment of error regarding Weis' standing to challenge the search, we shall first briefly address the propriety of the traffic stop pursuant to Terry v. Ohio, supra, and the length of detaining the vehicle and its occupants after the stop.
 {¶ 15} Under Terry v. Ohio, supra, and its progeny, a temporary investigative stop is proper if based on reasonable suspicion "that criminal activity may be afoot." Id. at 30. Reasonable suspicion must be based on "specific and articulable facts, which when taken together with rational inferences from those facts, reasonably warrant the intrusion."State v. Fuller 3rd Dist. Nos. 1-88-1, 1-88-2, 1989 WL 111981 citingUnited States v. Gomez (C.A.5 1985), 776 F.2d 542, 546. Additionally, the propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988),37 Ohio St.3d 177, 178, 524 N.E.2d 489, certiorari denied, 488 U.S. 910,109 S.Ct. 264, *Page 8 102 L.Ed.2d 252. Moreover, a stop founded on reasonable suspicion of criminal activity permits detaining a motorist briefly to request permission to search. Fuller, supra, citing United States v. Basey
(C.A.5 1987), 816 F.2d 980, 990.
 {¶ 16} In the instant case, we note that Yoder testified at the suppression hearing that he was advised by the complaining witness that the suspicious activity involving the vehicle and its occupants had justoccurred. Yoder also testified that upon terminating his conversation with the witness, he observed and identified the vehicle matching the witness's description after traveling only one block, and initiated a traffic stop of said vehicle after driving only two additional blocks.
 {¶ 17} Taken as a whole, the foregoing constitutes sufficient articulable facts upon which to base an investigatory stop of the vehicle. Therefore, we agree with the trial court's finding that Yoder had a reasonable and articulable suspicion of criminal activity relating to the subject vehicle and its occupants based upon his interview with the complaining witness who had just observed and immediately reported the suspicious activity.
 {¶ 18} Moreover, we note that once Yoder began questioning the occupants of the vehicle individually, each person gave somewhat different explanations which raised Yoder's suspicions about what these four men were actually doing in Celina at 3:00 a.m. We also note that the evidence does not indicate that any of the occupants objected to being detained or that any of them requested to be *Page 9 
released. Therefore, we do not find that the individual questioning of the occupants and subsequent search of the vehicle conducted after the driver's initial consent took an unreasonably excessive amount of time under the circumstances.
 {¶ 19} Accordingly, we find that the trial court did not err in overruling Weis' motion to suppress as to his allegation that the traffic stop violated Terry v. Ohio, supra, or to his allegation that the length of detaining the vehicle after the stop was unreasonable.
 {¶ 20} Turning our attention to the merits of the State's assignment of error, we note that the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the State is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. United States v. Chadwick (1977),433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538, overruled on other grounds inCalifornia v. Acevedo (1991), 500 U.S. 565, 111 S.Ct. 1982,114 L.Ed.2d 619.
 {¶ 21} It is clear that one who challenges a search or seizure has the burden of establishing an infringement of his personal Fourth Amendment rights. (Emphasis added). Rakas v. Illinois (1978), 439 U.S. 128, 140,99 S.Ct. 421, 58 L.Ed. 387. See also State v. Fuller, supra; State v.Jones 3rd Dist. No. 9-89-31, *Page 10 1990 WL 72394; State v. Stoddard 3rd Dist. No. 9-89-5, 1990 WL 72397. In this regard, it has been held that a person aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property hasnot had any of his Fourth Amendment rights infringed. Id. at 134. (Emphasis added). In short, a defendant who fails to show he had a legitimate expectation of privacy in the area invaded lacks standing to challenge the search. See Rawlings v. Kentucky (1980), 448 U.S. 98,100 S.Ct. 2556, L.Ed.2d 633.
 {¶ 22} Additionally, this court has previously held that "[t]he determination of a defendant's expectation of privacy in the area searched is the fundamental basis of standing to raise aFourth Amendment challenge." (Emphasis added). State v. Ratleff 3rd Dist. No. 8-02-31, 2003-Ohio-1028 citing State v. Masten (1989), Hancock App. No. 5-88-7, 1989 WL 111983 citing Mancusi v. DeForte (1968), 392 U.S. 364,88 S.Ct. 2120, 20 L.Ed.2d 1154. Thus, to determine whether Weis had standing to challenge the search of the vehicle, we "must focus first on the existence of any expectation of privacy" in the vehicle. Masten,supra. In so doing, "[t]he analysis of whether a person has a constitutionally protected legitimate expectation of privacy involves the two inquiries of whether the individual manifested a subjective expectation of privacy in the object of the search, and whether society is willing to recognize that expectation as reasonable." *Page 11 Ratleff, supra, citing Masten, supra, citing California v. Ciraolo
(1986), 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210.
 {¶ 23} We note that the State argues that Rakas v. Illinois, (1978)439 U.S. 128, 99. S.Ct. 421, 58 L.Ed.2d 387 applies to the facts of the present case. Rakas was a robbery case involving a stop and search where the defendant was a passenger in a car owned by the driver and denied ownership of the ammunition and firearms found in the vehicle and subsequently objected to the search. Although the issue of standing had been previously held in Jones v. United States (1960), 362 U.S. 257,80 S.Ct. 725, 4 L.Ed.2d 697 to belong to anyone who was "legitimately on the premises", the Supreme Court in Rakas disavowed the broad language in Jones and held that Fourth Amendment rights are personal, not vicarious, and that those rights "may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure. Rakas, 439 U.S. at 138, 99 S.Ct. at 428,58 L.Ed.2d at 398. Therefore, the Supreme Court held that a defendant may invoke the exclusionary rule only if he first proves that his own reasonable expectation of privacy was invaded. Rakas, 439 U.S. at 133,99 S.Ct. 421, 58 L.Ed.2d 387.
 {¶ 24} Additionally, the Supreme Court also held in Rakas that although defendants were legitimately present in the vehicle as passengers, this fact did not give them a legitimate expectation of privacy in the searched vehicle. *Page 12 
Specifically, the Supreme Court held that the defendant was not entitled to challenge the legality of the search of the automobile because he asserted "neither a property nor a possessory interest in the automobile, nor in the property seized. Rakas, 439 U.S. at 148,99 S.Ct. 421, 58 L.Ed.2d at 404.
 {¶ 25} In contrast, Weis argues that the State's reliance onRakas is misplaced as Rakas dealt solely with the issue of standing to challenge a search. Weis argues that in the instant case, the inventory search of the vehicle is secondary to the illegal seizure of the vehicle by Patrolman Yoder in violation of Celina Traffic Code Section 303.08
and the Towing/Impound Policy of the Celina Police Department. In support of his position, Weis directs our attention to State v.Carter (1994) 69 Ohio St.3d 57 which states that "If either the stopping of a car or the passenger's removal from it is unreasonable, in aFourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit." Carter 69 Ohio St.3d 57 at 63.
 {¶ 26} However, we find Weis' reliance on Carter to be misplaced. As the trial court correctly determined, both the stop of the vehicle and the individual questioning of the vehicle's occupants were reasonable. Additionally, we find that the evidence presented during the suppression hearing established that Weis was a backseat passenger in a vehicle driven by Adam Moorman. The evidence also *Page 13 
established that although Moorman was driving the vehicle, it was owned by his stepfather, Steven Freymuth, who was not present at the time the vehicle was stopped by Patrolman Yoder. We also note that at no time did Weis ever claim he was the driver or owner of the vehicle.
 {¶ 27} Therefore, as a defendant may invoke the exclusionary rule only if he first proves that his own reasonable expectation of privacy was invaded, we find that Weis' status as a passenger entitles him to no greater expectation of privacy as to the contents of the vehicle than that of the defendant in Rakas. Clearly, under the circumstances of the present case, Weis had no proprietary or possessory interest in the vehicle and has failed to establish a legitimate expectation of privacy in the vehicle or its trunk. See State v. Fuller, supra citingUnited States v. Ospina (D. Utah 1988), 682 F.Supp. 1182; State v.Emery (1979), 597 P.2d 375. Accordingly, we must conclude that Weis lacks standing to raise the constitutionality of the search. Based on Weis' lack of standing, we need not address the propriety of the impoundment of the vehicle by Patrolman Yoder.
 {¶ 28} Based on the foregoing, we find that the trial court erred in granting Weis' motion to suppress and holding that "[a]s a passenger in the vehicle, the defendant had at least a possessory interest in it." *Page 14 
 {¶ 29} Accordingly, the State's sole assignment of error is sustained and the judgment of the Court of Common Pleas of Mercer County is reversed and remanded for further proceedings consistent with this opinion.
Judgment reversed.
 WALTERS, J., concurs.
 ROGERS, P.J., concurring separately.
 (Walters, J., sitting by assignment in the Third AppellateDistrict.)