[Cite as *State v. Parker*, 2012-Ohio-839.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.    24406 |
| v. | : | T.C. NO.    09CR4154/01 |
| TAYLOR L. PARKER | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ____2nd____ day of ____March____, 2012.

· · · · · · · · · ·

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JOHN C. MEEHLING, Atty. Reg. No. 0077630, 1105 Wilmington Avenue, Dayton, Ohio 45420
        Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

{¶ 1}   Taylor Parker was found guilty by a jury of assembly or possession of chemicals used to manufacture a controlled substance (methamphetamine).  She was sentenced to two years of imprisonment and a term of post-release control of up to three

years.   Parker appeals from her conviction.

{¶ 2}   Parker and her boyfriend, Eric Rike, were stopped in a vehicle by Englewood police officers in December 2009, because Rike was suspected of theft.   When police officers decided to arrest Rike, they impounded the car and searched it, discovering various substances that they associated with the production of methamphetamine.   Based upon this discovery, the officers decided to arrest Parker as well.

{¶ 3}   Parker was charged with one count of assembly or possession of chemicals used to manufacture a controlled substance.   She pled not guilty.   Parker filed a motion to suppress the evidence found in the search of the car and her subsequent statement to the police.   After a hearing, the motion to suppress was overruled.

{¶ 4}   The case was tried to a jury in November 2010.   The two arresting officers, a detective, and a forensic chemist testified for the State.   Rike testified for the defense, claiming that the drug-making materials found in the car were his and that Parker had not been involved.   The jury found Parker guilty, and she was sentenced as described above.

{¶ 5}        Parker raises three assignments of error on appeal.

{¶ 6}   We will begin our discussion with Parker's second assignment of error, which states:

THE TRIAL COURT ERRED WHEN IT FOUND AT THE SUPPRESSION

HEARING THAT THE POLICE OFFICER'S DECISION TO TOW THE

VEHICLE, WHICH SUBSEQUENTLY GAVE POLICE THE AUTHORITY

TO PERFORM A "STANDARD" INVENTORY SEARCH OF THE

VEHICLE BEFORE IT WAS TOWED, WAS A VALID SEARCH ALTHOUGH IT AMOUNTED TO AN UNCONSTITUTIONAL SEARCH; AS SUCH, ALL EVIDENCE FOUND DURING THE SEARCH, AND STATEMENTS MADE AFTER THE SEARCH, SHOULD BE SUPPRESSED AS "FRUIT OF THE POISONOUS TREE."

{¶ 7}    Parker claims that the trial court erred in concluding that the search of the vehicle was a lawful search and in failing to suppress the evidence found in the vehicle and her statement to the arresting officer.

{¶ 8}    In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence.  *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist. 1994);  *State v. Broaddus,* 2d Dist. Montgomery No. 23525, 2010-Ohio-490, ¶ 17.    However, the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard; i.e. whether the warrantless serach was permissible under the Fourth Amendment. *Curry* at 96.

{¶ 9}    The State's evidence at the suppression hearing established the following facts:

{¶ 10}    On the evening of December 7, 2009, Englewood Police Officer Emily Crist  responded to "a report of a shoplifter fleeing from loss prevention" at the Walmart store at 7725 Hoke Road.  The dispatch described the perpetrator as a white man in a red sweatshirt who was driving a white car.  As Officer Crist pulled into the Walmart parking lot, she observed a white vehicle, driven by a man who matched the suspect's description,

pulling out of the parking lot.

{¶ 11} Crist stopped the vehicle nearby. As her spotlight shown on the vehicle, she could "see the subjects inside, that they were making furtive movements. The passenger was shoving items in between the driver/passenger seat, underneath a blanket in the floorboard." Crist testified that she suspected there might be "some sort of a weapon or some sort of incriminating evidence" in the car. The occupants of the car stopped moving about as Crist approached the vehicle, but when she talked with them, they appeared to Crist to be nervous.

{¶ 12} Crist took identification from Eric Rike, the driver, and Parker, the passenger. When she ran the information through the LEADS system in her cruiser, she discovered that neither Rike nor Parker was the registered owner of the car and neither had outstanding arrest warrants.

{¶ 13} When Officer Richard Ridgway arrived to assist Crist, Rike and Parker were removed from the vehicle, frisked for weapons, handcuffed, and moved into Crist's cruiser; they were informed that they were not under arrest. Ridgway went back to Walmart to investigate the alleged theft while Crist stayed with Rike and Parker. When Ridgway returned, the officers decided to arrest Rike for theft.

{¶ 14} Officer Crist testified that, when a driver of a car is arrested, a passenger in the car is not permitted to leave with the car if it is owned by a third party; in such a situation, the officer exercises his or her discretion in deciding whether to have the car towed or to contact the owner to inquire about leaving the car or allowing a passenger to drive it. Crist decided to have the car towed.

{¶ 15} Pursuant to a "standardized procedure," Crist conducted an inventory of the car before having it towed.   In the course of this inventory search, Crist found items that she "recognized * * * to be used to make methamphetamines."   These items were located under a blanket on the passenger side of the car, in the door on the driver's side, and in the back seat.

{¶ 16} After the inventory was completed, Crist and Ridgway decided to arrest Parker as well as Rike.   Crist searched Parker and Parker's purse, which had been placed on top of the cruiser while Parker was seated inside the cruiser.   Additional items that the officers associated with making methamphetamine were found in Parker's purse and on her person.

{¶ 17} When the searches of the vehicle, Rike, and Parker were completed, Rike and Parker were both returned to Crist's cruiser.   Parker had not been advised of her rights.   While Crist was completing paperwork in the front seat, Parker stated that "he [Rike] had nothing to do with it.  * * * [E]verything in the car was hers."   Crist did not initially hear Parker's statement due to passing traffic, and asked her to repeat it, which Crist did.   Crist did not ask Parker any other questions before or after Parker made this statement.

{¶ 18} The trial court concluded that the furtive movements observed by Officer Crist justified "a belief that there is something in that car that is fruit of the crime for which that person is being stopped."   The court further concluded that, even if the search were not constitutional on the basis that the officers believed there was contraband in the car, the inventory of the car was reasonable in light of the decision to arrest Rike, the driver, for theft.   Finally, the court determined that Parker's statement in the back of the police cruiser

was "a volunteered statement" that did "not require *Miranda* rights," because it was not in response to questioning by the police.

{¶ 19}   With respect to warrantless search of the car, the trial court identified two justifications for the search: the officer had a reasonable basis to believe that "fruit of the crime" would be found in the car, and the decision to tow – and therefore to inventory – the car was reasonable under the circumstances.

{¶ 20}   Under the well-established automobile exception to the Fourth Amendment's warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband, and exigent circumstances necessitate a search or seizure.  *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992); *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).  A vehicle's mobility is the traditional exigency for this exception to the warrant requirement. *Mills* at 367*; California v. Carney*, 471 U.S. 386, 393, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).  The United States Supreme Court has also found that, during an investigative stop, a police officer who possesses a reasonable belief that the suspect is dangerous and may gain access to weapons may conduct a protective search of the interior of the vehicle for weapons.  *Michigan v. Long*, 463 U.S. 1032, 1049-1050, 103 S.Ct. 3469, 77 L.Ed .2d 1201 (1983).  "This search is consistent with and is an extension of the principles set forth in *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] regarding a frisk of a person."  *State v. Wilcox*, 177 Ohio App.3d 609, 2008-Ohio-3856, 895 N.E.2d 597, ¶ 17 (2d Dist.), citing *Long*.

{¶ 21} Officer Crist testified that, when she saw furtive movements by the

occupants of the car, she suspected that there might be a weapon or incriminating evidence in the car. However, the testimony at the suppression hearing, taken as a whole, did not provide a reasonable basis to conclude that the officers searched the car for contraband or weapons. Although Rike was suspected of shoplifting, Crist did not testify that she believed there could be stolen items in the car. Moreover, Ridgway's conversation with loss prevention officers at Walmart resulted in the officers' decision to arrest Rike for theft, before any search of the vehicle was conducted. The officers' actions suggested that store employees had accounted for the stolen merchandise or, at the very least, that they had probable cause to arrest Rike for theft before they searched the car. And *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) would not apply, since it requires that "circumstances unique to the vehicle context justify a search incident to a lawful arrest where it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 343, citing *Thornton v. United States*, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed. 905 (2004) (Scalia, J., concurring in judgment). Based on the evidence presented, the search was not justified due to exigent circumstances or a reasonable belief that contraband would be found in the car.

{¶ 22} Although Crist also seems to have contemplated the presence of weapons based on the furtive movements of the car's occupants, her behavior after stopping the car did not suggest that she was concerned about the presence of weapons. A substantial amount of time elapsed before the car was searched, i.e., Officer Ridgway responded as backup, left the traffic stop to gather information at Walmart, and returned to the traffic stop. During this time, Rike and Parker waited in the cruiser in handcuffs, and

the vehicle was not searched for weapons. After Ridgway returned, the occupants remained in the cruiser.

{¶ 23} "In order to perform a protective search, the officer must have 'a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.'" *Wilcox*, 177 Ohio App.3d 609, 2008-Ohio-3856, 895 N.E.2d 597 (2d Dist.), at ¶ 17, quoting *Long* and *Terry*. Under the circumstances presented in this case, where the car was searched only after significant investigation and passage of time, after the occupants were secured in a cruiser, and after the officers had decided to arrest them, there was no reasonable basis to conclude that the search was a sweep for weapons motivated by concern for the officers' safety. The search was not justified as a protective search for weapons.

{¶ 24} Crist's testimony at the suppression hearing made clear that her primary justification for the search was conducting an inventory prior to towing the vehicle. The trial court found that this was an additional justification for the warrantless search.

{¶ 25} In the case of vehicle inventories, the United States Supreme Court has recognized that such searches are a "well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *see also South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Mesa,* 87 Ohio St.3d 105, 108-109, 717 N.E.2d 329 (1999), citing *Bertine* and *Opperman*. Such searches are administrative in nature and "intended to (1) protect an individual's property while it is in police custody, (2) protect police against

claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities." *Mesa* at 109, citing *Opperman* at 369. However, the Court has emphasized that warrantless inventory searches of automobiles are permissible only where the automobile has been legally impounded. *State v. Collura*, 72 Ohio App.3d 364, 370, 594 N.E. 2d 975 (8th Dist. 1991), citing *Opperman.*

Interpreting *Opperman* , the Ohio Supreme Court has held that, to be reasonable, a valid warrantless inventory search must be performed "pursuant to a standard practice and not merely as a pretext for an evidentiary search." *State v. Cole*, 93 Ohio App.3d 712, 715, 639 N.E.2d 859 (9th Dist. 1994), citing *State v. Robinson*, 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979). Such a standard practice or policy need not be in writing so long as it is regulated by "standardized criteria or an established routine." *State v. McCulloch*, 3d Dist. Logan No. 8-91-25, 1992 WL 209297, *3 (Aug. 31, 1992), citing *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

{¶ 26} Parker argues that the inventory search was a "guise" so that the officers could follow their "hunch" that they would find contraband in the vehicle. She claims that the officers "knew exactly what they were doing when they used their 'discretion' to not make a few calls and locate, or even attempt to contact, the owner of the vehicle."

{¶ 27} As a preliminary matter, we question whether Parker had standing to challenge the inventory of the vehicle. Parker was a passenger in the vehicle, and the evidence does not suggest that she had permission from the owner to use it. Where a passenger "had no proprietary or possessory interest in the vehicle and has failed to establish a legitimate expectation of privacy in the vehicle or its trunk * * * , we must conclude that

[she] lacks standing to raise the constitutionality of the search." (Citations omitted.) *State v. Weis*, 3d Dist. Mercer No. 10-06-22, 2007-Ohio-2279, ¶ 27, citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also State v. Burton*, 5th Dist. Licking No. 00CA13, 2000 WL 987274, *2 (July 14, 2000); *State v. Jackson*, 2d Dist. Clark No. CA3058, 1994 WL 100712, *4 (Mar. 9, 1994).

{¶ 28} Moreover, Parker's argument challenging the officers' decision to impound the vehicle is not supported by the record. In this case, the driver of the vehicle was under arrest, neither of the occupants of the vehicle was the owner, and there was no other evidence to suggest that Parker, the passenger, was authorized by the owner to use the vehicle. (The record of the suppression hearing contains no evidence about the identity of the owner or the owner's relationship to Rike or Parker.) Officer Crist testified that officers do not "let the passenger then take the vehicle away or drive away from the scene" if the driver is under arrest and the vehicle belongs to a third party. According to Crist's testimony, an officer has discretion in such a situation to contact the owner to make arrangements for the vehicle or to tow the vehicle. Crist decided to tow the vehicle. Even if Crist's decision were motivated, to some degree, by a suspicion that contraband would be found in the vehicle, we cannot conclude that Crist acted improperly in making the choice that she did.[1]

---

[1] In its brief, the State references in a footnote the Englewood, Ohio Code of Ordinances, Section 404.05, related to impoundment of vehicles. The State suggests that Officer Crist may have been mistaken in her belief that she was authorized to tow the vehicle under these circumstances. Neither party presented this evidence in the trial court, and the trial court's determination was reasonable based on the evidence presented. (But it was commendable for the State to bring this concern to our attention.) Moreover, Section 404.05 provides for impoundment when a vehicle is "unattended" due to the arrest of the driver or when it is "unattended upon any street, bridge or causeway and is so illegally parked as to constitute a hazard or obstruction."

{¶ 29} The second assignment of error is overruled.

{¶ 30} Parker's first assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT OVERRULED DEFENDANT-APPELLANT'S RULE 29 MOTION FOR ACQUITTAL.

{¶ 31} Parker claims that her Crim.R. 29 motion for acquittal at the close of the State's case should have been granted, because the State failed to prove that she had assembled or possessed the chemicals and other materials found in the car.

{¶ 32} When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a sufficiency of the evidence claim. (Citation omitted.) *State v. Thaler*, 2d Dist. Montgomery No. 22578, 2008-Ohio-5525, ¶ 14. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 33} Parker was charged with assembly or possession of chemicals used to

---

Crist testified that the car was stopped on a bridge in the roadway. The term "unattended" is not defined, but the ordinance does not suggest that there are circumstances under which an officer would be required to permit a third party to leave with a car.

manufacture a controlled substance, in violation of R.C. 2925.041, a felony of the third degree. R.C. 2925.041(A) provides: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." "[I]t is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance * * *. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance * * *, with the intent to manufacture a controlled substance * * *, is sufficient to violate this section." R.C. 2925.041(B).

{¶ 34} At trial, Officers Crist and Ridgway testified about the traffic stop that resulted from a theft at Walmart and about the officers' decision to arrest Rike. Officer Crist observed both occupants of the car making "furtive movements" as the car was coming to a stop. Both officers testified that, once they decided to arrest Rike, they did an inventory of the car because neither Rike nor Parker was the owner, and the officers decided to have the car towed. Officer Ridgway testified that they "were [not] anticipating finding anything in particular" when they conducted the search. However, the officers found plastic baggies, red and white tablets, syringes, windshield washer fluid, antifreeze, coffee filters wrapped in electrical tape, funnels, a grinder, razors, and an unopened box of pseudoephedrine. The officers testified that some items were found on the driver's side and some on the passenger's side of the vehicle. The officers recognized the items found in the car as products used in the manufacture of methamphetamine. The officers decided to charge both Rike and Parker with assembly or possession of chemicals used to manufacture

methamphetamine.

{¶ 35} When Rike and Parker had been arrested and were seated in the cruiser, Parker told Officer Crist, "Everything that you pulled out of the car was mine." Later, when Parker was interviewed by a detective and had been fully informed of her rights, she reaffirmed her admission that she owned the pills and other paraphernalia found in the car.

{¶ 36} At trial, Rike claimed that he had asked Parker to take responsibility for the suspicious materials, although they did not, in fact, belong to her, because he had a lengthy criminal record and she did not. He stated that, at the time, he "figured that she'd * * * only get probation or something like that." Rike asserted that all of the supplies had, in fact, belonged to him. Indeed, he had already pled guilty to illegal possession or assembly of chemicals for the manufacture of drugs related to this incident.

{¶ 37} The State presented evidence from which the jury could have reasonably concluded that Parker knowingly possessed some or all of the materials found in the car and that those materials were possessed for the purpose of manufacturing a controlled substance. Although Rike and Parker attempted, at various times, to take sole responsibility for the substances and their use, the jurors could have reasonably concluded that Rike and Parker were involved in the enterprise together. Because the State presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law, the trial court did not err in overruling Parker's Crim.R. 29 motion.

{¶ 38} The first assignment of error is overruled.

{¶ 39} Parker's third assignment of error states:

THE TRIAL COURT'S DECISION IS: 1.) AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE, AND 2.) THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION.

**{¶ 40}** Parker argues that her conviction was supported by insufficient evidence and was against the manifest weight of the evidence.

**{¶ 41}** As we discussed above, the standard for reviewing the sufficiency of the evidence is the same as the standard for reviewing the denial of a Crim.R. 29 motion. Under the first assignment of error, we reviewed the State's evidence and concluded that there was sufficient evidence to support Parker's conviction. Thus, we will confine our discussion under this assignment of error to Parker's argument that her conviction was against the weight of the evidence.

**{¶ 42}** "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 44.

**{¶ 43}** Because the trier of fact sees and hears the witnesses at trial, we must

defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id*.

{¶ 44} The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 45} Parker does not dispute that the substances found in the car were well-suited to the production of methamphetamine. She simply contends that they did not belong to her, i.e., that the weight of the evidence supported the conclusion that she had lied about possessing the substances to protect her boyfriend, who faced more serious prison time because of his more extensive criminal record. Although this was one possible interpretation of the evidence (and the one argued very forcefully by defense counsel), it was not the only interpretation. The jury could have reasonably concluded that Parker possessed the materials or that Parker and Rike had engaged in this criminal enterprise together. In either case, the jury could have reasonably concluded that Parker was guilty. It did not clearly lose its way or create a manifest miscarriage of justice in reaching the conclusion that it did.

{¶ 46} The third assignment of error is overruled.

{¶ 47} The judgment of the trial court will be affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Michele D. Phipps
John C. Meehling
Hon. Dennis Adkins